*In re* Petition of JAYNE in the Matter of VETTERLEIN and others.

(*District Court, S. D. New York.* June 26, 1886.)

1. BANKRUPTCY—INFORMER'S COMPENSATION—REV. ST. § 3090—JURISDICTION ON PETITION.
    Upon a petition filed in bankruptcy by an informer, under section 3090 of the Revised Statutes and the act of 1867, to have an adjudication as to his claim against the United States, a creditor of the bankrupt by judgment recovered through the information of the petitioner, *held*, that the court had no jurisdiction of the matter upon summary petition, no money having been recovered in that suit, and there being no fund in court to the credit of that cause.

2. COURTS—COURT OF CLAIMS—JURISDICTION—INFORMER'S LIEN ABOLISHED—RES JUDICATA—ACT OF JUNE 22, 1874, §§ 6, 26—CONSTRUCTION OF.
    Since the passage of the act of June 22, 1874, an informer has no vested interest in any funds recovered by the government through information given by him, but only a right to compensation as a personal claim against the gov-

ernment. As respects suits existing at the passage of that act, the secretary of the treasury had power, under section 26, to determine the informer's compensation, without any previous examination or report thereon by the court, under section 6. *Held*, therefore, that, upon a claim made by the petitioner and others to the secretary of the treasury, and a reference thereof by him to the court of claims, without any previous examination by the court in which the principal action was pending, the court of claims had jurisdiction of the person and of the subject-matter, and that its decision adverse to the petitioner's exclusive claim was valid and binding.

In Bankruptcy.

*Roger M. Sherman*, for petitioner.

*Elihu Root*, U. S. Atty., and *Geo. E. P. Howard*, Asst. U. S. Atty., for the United States.

*Dudley Phelps*, for claimant, Kanski.

BROWN, J. Upon examination, I am satisfied that I have no jurisdiction to entertain a summary petition by Mr. Jayne, as informer, to adjudicate upon his rights, as against the United States, under the act of 1867. If the petition were based upon the act of 1874, to recover a suitable compensation, this court would have jurisdiction to determine the matter by petition, if the case were brought within section 6 of that act. But the claim in this case is to a moiety of the proceeds recovered under section 1 of the act of March 2, 1867. Under that act there is no authority in this court to examine informers' claims in a summary way by petition, nor, so far as I know, was there any such authority until the act of June 22, 1874, except as an incident to some suit, resulting from the informer's efforts, and while the court was in custody of the proceeds collected in that cause. In the case of *U. S.* v. *George*, 6 Blatchf. 37, the proceeds of the judgment had been paid into court, and awaited the order of the court; and such was the fact in all the cases there referred to. Such is not the case here. There is no fund in the custody of the court, or under its control, in the suit brought by the procurement of the informer. That suit was a suit *in personam*, and resulted, in 1872, in a judgment of about $100,000 in favor of the United States. Nothing has ever been collected in that suit itself. There is no money in the court to the credit of that cause, and none is likely to be. The United States proved its demands as a creditor against the bankrupt's estate, and the only money that the United States will receive will be received simply as a creditor of the bankrupts, upon a distribution and payment by the assignee in bankruptcy, if any such payment should be ordered and made. The informer has no claim against the bankrupts, nor any demand affecting the amount of the bankrupts' assets, or the amount to be distributed by the assignee; and hence no claim of which the court can take cognizance by petition in bankruptcy. He has nothing but a claim against the United States, a creditor of the bankrupts, and there is no jurisdiction in this court to entertain, by petition, a mere claim of one creditor against another creditor entitled to a distribution in bankruptcy.

Any decision I might make of the question on which a decision is desired, namely, whether the informer has a right to payment from the United States, under the moiety act of 1867, as an interest vested in him prior to the repeal of the act of 1874, would be binding upon neither party, and the petition should therefore be dismissed.

---

Upon a subsequent petition under the act of 1874, the following decision was rendered:

BROWN, J. The petitioner asks that this court shall take proceedings under section 6 of the act of June 22, 1874, (Supp. Rev. St. 78,) to examine his claim, as an informer, upon certain funds collected by the United States from Vetterlein & Co., under a payment and distribution by the assignee in bankruptcy upon a judgment for violating the revenue laws, obtained, in 1872, in consequence of his information, and which judgment was proved as a claim in bankruptcy. The petitioner alleges that he alone gave the first actual information of the fraud upon which the claim of the government against the bankrupts was based. But it appears that a few weeks afterwards, and on or about the first of August, 1869, a written claim was filed with the secretary of the treasury for an informer's share, which was signed by the petitioner and three other persons. Upon a claim of the latter to compensation as informers, recently made upon the secretary of the treasury, since the hearing on the previous petition, in respect to a considerable sum recently paid into the treasury by the assignee in bankruptcy, the question, as between the petitioner alone and the other informers as alleged joint claimants, was submitted by the secretary of the treasury to the court of claims for decision, under section 2 of the act of March 3, 1883, or of section 1063 of the Revised Statutes. The petitioner thereupon filed his petition in the court of claims, praying that he be declared the sole informer, and alone entitled to compensation as such. That court subsequently decided, upon careful consideration, against the petitioner's exclusive claim, and held that all the four, including the petitioner, were entitled to compensation jointly.

As this was an adjudication upon the very question now sought to be presented to this court, it is manifestly *res adjudicata,* provided the court of claims had jurisdiction of the cause. The petitioner's counsel now urge that the proceeding before the court of claims was *coram non judice,* because, under the sixth section of the act of June 22, 1874, above referred to, it is declared that "no payment shall be made to any person furnishing information in any case wherein judicial proceedings shall have been instituted, unless his claim for compensation shall have been established to the satisfaction of the court or judge having cognizance of such proceeding, and the value of his services duly certified by said judge or court for the informa-

tion of the secretary of the treasury;" and because no such proceedings were ever taken, prior to the proceedings before the secretary and the court of claims, or at any time, in the district court of this district, which was the court in which the judgment against Vetterlein & Co. was obtained.

This application is not entitled to consideration beyond the strictest legal right, after the petitioner has made his application to the secretary of the treasury, has once obtained an award, and afterwards filed his petition in the court of claims, and obtained a careful and well-considered adjudication on the merits, without any intimation of any doubt of the jurisdiction either of the secretary, or of that court, to proceed with the matter independently of section 6 of the act of 1874. The petitioner's petition to the court of. claims sets out fully all the facts upon which he now relies, and there is neither protest nor objection to the jurisdiction of that court to determine the question upon its merits. There is no fact that was not as well known to the petitioner then as now, nor is there anything new in his application to this court. If objection to the want of jurisdiction could be waived, the petitioner's acts in this case certainly amount to such a waiver. Upon the argument I had regarded that application as somewhat in the nature of a proceeding *in rem*, to obtain a share of the fund *in specie* to which the informer was by law entitled. If such were the true nature of the proceeding under the existing law, in order that an adjudication should be binding the court that made the adjudication must have jurisdiction of the subject-matter, as well as of the applicant; and I regarded the petitioner, therefore, as perhaps legally entitled to dispute the jurisdiction of the court of claims over the subject-matter, notwithstanding his voluntary submission of the matter to them, and that no question of jurisdiction was there raised.

Under the former law (section 3090) there was doubtless some ground for this view, as that section provides that "the residue of the proceeds should be distributed in the manner following, to-wit: One-fourth to the person giving the information," etc. In section 3689, also, which provides for permanent appropriations, the phrase used is "distributive *shares* of fines, penalties, and forfeitures under the customs laws," indicating that the informer has a proprietary interest therein after "the proceeds" have been paid into the treasury. From the time of such payment the informer was regarded as having a vested interest in his share of the proceeds of which he could not be subsequently deprived; and this interest would seem, by the statute and the decisions, to have been an interest in the fund *in specie*. *U. S.* v. *Morris*, 10 Wheat. 290. See *Confiscation Cases*, 7 Wall. 454, 462; *Brown* v. *U. S.*, Woolw. 198; *Eight Barrels Distilled Spirits*, 1 Ben. 472; *U. S.* v. *Harris*, 1 Abb. (U. S.) 110; *U. S.* v. *Simons*, 7 Fed. Rep. 709.

But the act of 1874 has clearly abolished any such specific right. The second section of that act expressly repealed all former pro-

visions of law whereby "any share of fines or forfeitures" was to be paid to informers. Except where a specific interest was already vested in the informer,—which is not the case here,—the informer thereafter could look to the provisions of the act of 1874 alone for compensation. The language of that act in relation to the rights of the informer is wholly different from that of section 3090, or section 1 of the act of 1867. The informer is to be entitled to "such compensation" only "as may be just and reasonable, not exceeding $5,000," to be paid, under the direction of the secretary, "out of any money appropriated for that purpose." This language gives no specific interest in the fund to the informer, even after payment of the money into the treasury. As the petitioner's right must be derived wholly through the act of 1874, there is nothing remaining to the informer analogous to a right *in rem*, but only a personal claim against the government to a reasonable compensation; and the adjudication of the court of claims, made in part upon the petitioner's own petition, is therefore binding upon him, unless that proceeding was, in effect, prohibited by section 6 of the act of 1874 until a prior examination by this court in accordance with that section.

I am of opinion, however, that the practical construction which has been given by the treasury department to section 6 and section 26 of the act of 1874, in numerous adjudications as regards information given leading to suits already commenced before the passage of that act, is the correct one, and that as to such claims section 6 of that act does not apply. *U. S.* v. *Gilmore*, 8 Wall. 330; *U. S.* v. *Graham*, 110 U. S. 219; S. C. 3 Sup. Ct. Rep. 582. The last section of the act, (section 26,) while repealing all former acts inconsistent with it, provides that nothing therein contained "shall affect existing rights of the United States," and that, "in all cases in which prosecutions have been actually commenced for forfeitures incurred, the secretary of the treasury shall have power to make compensation, as provided in the fourth section of the act, to the persons who would, under the former laws, have been entitled to *share* in the distribution of such forfeitures." The latter clause of this section is evidently for the purpose of saving certain existing rights. It recognizes that under former laws certain persons would have been entitled to share in the distribution under suits then existing, and it provides, not that such persons shall still have a *share*, as such, but that "the secretary of the treasury shall have power to make compensation as provided in the fourth section." It does not say "as provided in the fourth and sixth sections," but only "as provided in the fourth section." The effect of the sixth section is to prevent the secretary of the treasury from making any compensation except where the court or judge has found the informer's claim established to its satisfaction, and has certified the value of his services. There is no such limitation upon the power of the secretary, under section 26, as respects suits existing at the time of the passage of the act. The two sections are there-

fore incompatible, and the specific power given by section 26 must be held prevailing in the specific cases there named, viz., existing suits, while the general language of section 6 must be limited to those cases in which judicial proceedings were commenced after the passage of the act. In this way effect is given to both sections, in accordance with the usual rule, where there are apparent conflicts in different sections of the same act, viz., that the general language of one section must be limited in order to give effect to the specific provisions of another section. *Pennington* v. *Coxe*, 2 Cranch, 33, 52; *Mutual Life Ins. Co.* v. *Champlin*, 22 Blatchf. 334, 337; S. C. 21 Fed. Rep. 85, 87; *U. S.* v. *Bassett*, 2 Story, 389; *U. S.* v. *Auffmordt*, 19 Fed. Rep. 901, 902.

In the present case the suit was already pending at the time of the passage of the act of 1874. The subject of the informer's compensation was therefore properly before the secretary and the court of claims, and its decision is binding.

In the decision on the former petition referred to by the petitioner's counsel, it appeared that the petition was based upon the act of 1867. No ruling was intended upon the question here presented.

On both grounds the petition should be denied.