MUTUAL LIFE INS. Co. *v.* CHAMPLIN and others.

*(Circuit Court, S. D. New York.   July 18, 1884.)*

1. REMOVAL OF CAUSE—ACT OF 1875—CITIZENSHIP.
   Where all the parties on the one side are residents of different states from any of the parties on the other side, a suit containing but a single controversy may be removed by either one of the plaintiffs or defendants, under the second clause of section 2 of the act of 1875; or by all the plaintiffs or by all the defendants, jointly, under the first clause.

2. SAME—CONSTRUCTION.
   The natural import of the language of one part of a statute should not be narrowed by construction though it overlap in part the provisions of another part of the same statute, where both will still have a distinct and exclusive purpose to subserve.

3. SAME—SINGLE CONTROVERSY.
   Only the first clause of the above section embraces cases of a single plaintiff and defendant; only the second clause embraces cases in which removable and non-removable controversies are joined in the same suit; both clauses cover cases having several plaintiffs or defendants, and only a single controversy, and that a removable one.

4. SAME—CITIZENSHIP.
   Where a controversy is a removable one under the United States constitution by reason of the citizenship of the several plaintiffs and defendants in different states, the individual right of either defendant to remove the cause has been recognized by congress in the second clause of section 2 of the act of 1875; and this clause should therefore be construed as embracing suits having but a single controversy, in furtherance of the apparent general intent of the act of 1875, to provide for the removal of causes between individuals up to the limits of the undoubted intent of the constitution, since the language of the second clause is broad enough to include this, and there is no other clause sufficient for that purpose.

Motion to Remand.

The complainant, in March, 1879, insured the life of Edmund W. Raynsford, in the sum of $10,000, by a policy made payable to his executors, administrators, or assigns.   The insured resided at Providence, Rhode Island, and died there in January, 1883.   The defendant Champlin, a citizen of that state, was duly appointed administrator of his estate, and subsequently took out ancillary letters of administration in this state.   The deceased left a widow and one son, Charles K.   In March, 1881, he had assigned the policy to the defendant Sparrow.   The validity of this assignment being contested by the administrator and the distributees of the estate of the deceased, the complainant filed a bill of interpleader in the supreme court of this state, against all the above-named claimants of the insurance money, who are all non-residents of this state, offering to pay into court the money due on the policy.   The defendant Champlin removed the cause to this court, upon his own petition, under the first clause of section 2 of the act of 1875.   On motion of the defendant Sparrow the cause was remanded to the state court, because all the defendants did not join in the petition, as required in a proceeding under the first clause, in which the word "party" is construed to mean all who are upon the same side of the controversy.

Thereafter the defendant Charles K. Raynsford, before answer, removed the cause to this court under the second clause, alleging in his petition that the "said policy is the property of this petitioner by virtue of certain conveyances and transfers to him from said Edmund W. Raynsford; that all the defendants are citizens of states other than the state of New York, where the plaintiff resides; and that there is a controversy in the suit which is wholly between citizens of different states, and can be fully determined as between them; and that the petitioner is actually interested therein." Thereupon the defendant Sparrow made the present motion again to remand the cause, on the ground that there is but a single controversy in the suit, and that in that case a removal can be had only under the first clause of section 2, and then only when all the defendants or all the plaintiffs unite in the petition.

*Hathaway & Montgomery* and *H. G. Atwater*, for motion.

*Donald McLean, Francis Lawton,* and *Wm. H. Arnoux*, opposed.

BROWN, J. The second clause of the second section of the removal act of 1875 declares that when, "in any suit between citizens of different states, * * * there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, * * * then either one or more of the plaintiffs or defendants may remove," etc. Here is an explicit declaration that the cause may be removed by either one of the plaintiffs or the defendants, provided certain specified conditions exist. For the purposes of this motion the averments of fact contained in the petition must be taken to be true, and the petitioner must be deemed, therefore, to be a necessary party to the action. The suit, therefore, although containing but a single controversy, fulfills literally every one of the conditions of the second clause. Is the court warranted in narrowing the scope of this clause by construction, and in annexing to it a condition not found in the statute, viz., that the suit must contain two or more controversies? I think not. The language of the second clause is, doubtless, designed to embrace suits which do contain two or more controversies, and to authorize removal at the instance of any one plaintiff or necessary defendant, provided the necessary conditions exist as respects any one distinct controversy in the suit. That may be, possibly, its most useful purpose, as it is, doubtless, the purpose for which this clause has been most frequently invoked and applied. But it does not follow that such is its only purpose. The language used in no way restricts it to suits containing two or more controversies; nor is the language such as would naturally have been chosen if such restriction had been intended. Had such been the intention, we should expect to find some such words as, "When, in any suit *containing two or more controversies,* * * * there shall be a controversy which is wholly," etc., or some equivalent expression indicating an intention to make such a limitation. The language actually chosen is such as applies equally to

suits containing one controversy or several. In substance, the court is asked to limit its effect by interpolating some such clause as that above italicized. Only clear and strong reasons could justify such a limitation of the language of the statute by construction. The reasons urged seem to me insufficient.

It is said that in no reported case has the second clause been applied to a suit containing but a single controversy. But it is equally true that there is no reported case to the contrary. It is but nine years since this clause was enacted. The question may not have been previously presented for decision, or the result may not have been thought of sufficient interest or importance to be reported.

It is further said that the phrase, "and which can be fully determined as between them," indicates that several controversies are contemplated. That is true, since that phrase would be unnecessary where there is but a single controversy in the suit. But this only shows that the clause was designed to embrace suits which do contain two controversies, as well as suits which contain but one controversy; and that when applied to a suit containing several controversies, the same conditions must exist as to that controversy which necessarily exist when there is but one controversy in the case.

Again, it is urged that this construction of the second clause leaves nothing for the first clause to act upon, and that thus the second clause would wholly supersede the first; since, if any one of several defendants or plaintiffs could remove a suit containing but a single controversy, under the second clause, there would never be any occasion to resort to the first clause, which requires all on the same side to join in the petition. It is a maxim in the construction of statutes that some effect is to be given, if possible, to all their provisions, since all are presumed to have been intended to have some effect. The general words of one part of a statute must, therefore, sometimes be limited by construction in order to give effect to specific provisions in another part. If the second clause of this section, applied according to its literal terms, would wholly supersede the first clause, the principle referred to would apply, and would require the two to be harmonized and made effectual by the application of some limitation to the second clause, which the context, or the general purpose of the statute, might indicate as the actual intention of congress. But the first clause is not wholly superseded by the literal terms of the second. The latter clause applies only where there are several parties plaintiff or defendant; because its language is, "either one or more of the plaintiffs or defendants may remove," etc. There must be, then, at least two plaintiffs or two defendants. There is nothing in the language of the second clause which can be made to apply to the case of a single plaintiff and a single defendant. But the first clause does cover the case of a single plaintiff and a single defendant, as well as of several plaintiffs and several defendants; and it therefore subserves at least one exclusive purpose.

The result, therefore, is that only the first clause will embrace suits having but a single plaintiff and single defendant; only the second clause will embrace suits having several plaintiffs and several defendants, and at the same time several controversies, some of which are of themselves removable, and some not; while in other cases, where there are several defendants or several plaintiffs, all resident in different states from those on the other side, the proceedings for removal may be taken under either clause, whether the controversies in the suit be one or several. As each of the two clauses thus has some exclusive purpose to subserve, the fact that they overlap each other in other cases like the present, in which an option exists to proceed under either clause, seems to me no sufficient reason for narrowing the scope of the second clause by the interpolation of a condition not found in the statute.

If the point raised by this motion has not been expressly decided, it has been, at least, suggested by the supreme court, without deciding the question, and without any adverse intimation, that a single controversy might possibly be removable under the second clause as well as under the first. *Removal Cases*, 100 U. S. 470.

The decisions upon the second clause are not inharmonious with the construction here given, and any different construction would involve anomalies altogether inadmissible. In the leading case of *Hyde* v. *Ruble*, 104 U. S. 407, the supreme court, in defining when a cause is removable under the second clause, make no mention of the existence of several controversies in the suit as one of its conditions. The court say:

"To entitle to removal under this clause, there must exist in the suit a separate and distinct cause of action, in respect to which all the necessary parties on one side are citizens of different states from those on the other."

This requirement may be met as fully by a controversy standing alone, as by one joined with other controversies which are not by themselves removable. In the latter case it is the constant practice, under the second clause, to remove the whole suit at the instance of a single defendant, and this is the use to which the second clause is most commonly applied. If the present suit, therefore, contained an additional controversy affecting the present defendants, and also other defendants who were citizens of the same state with the plaintiff, then, although the latter controversy would not by itself be removable under either the first or the second clause, yet, undeniably, the whole suit would be removable under the second clause, at the instance of either of the present defendants, by reason solely of the existence of the present controversy in the suit. But if the present controversy is such as to make a whole suit removable by one defendant, though it contained another controversy not in itself removable, it must, in all reason, be removable in like manner when standing alone. It would be a gross anomaly to construe a statute in such a way as to mean that a controversy which, when joined with another controversy not removable

at all, would be sufficient to remove both at the instance of a single defendant, yet should not itself be removable in the same manner when standing alone. Such a construction would make the removability of a suit and the manner of removing it under the second clause depend, not on the character of the removable controversy, but upon its being joined with a controversy not in itself removable at all. It is not credible that any such anomaly should have been intended, and none such should be created by construction.

This view is further sustained by a comparison of the removal act of 1875 with the provisions of the federal constitution, and by the apparent intention of congress by this act to make provision for the jurisdiction of the federal courts, and the removal of suits between individuals co-extensive with the grant of judicial power. The second section of article 3 of the constitution defines the cases to which the judicial power of the United States shall extend, among which are "controversies * * * between citizens of different states." Legislation was, however, necessary to give effect to this article of the constitution. Prior to the act of 1875, congress, by the judiciary act of 1789, and the acts of 1866 and 1867, had dealt with this subject by piecemeal only, and far within the scope of the constitutional grant of power. The provisions of the act of 1875, however, seem carefully drawn so as to cover the entire limits of the constitutional provision, so far as these limits are clearly settled. The construction of the particular provisions of the removal act should, therefore, be in harmony with, and in furtherance of, that general intention, and not such as to defeat it. It is an unsettled question whether the phrase "controversies * * * between citizens of different states" means a controversy which is wholly between citizens of different states, or whether it may include controversies in which some only, but not all, of the parties on opposite sides are citizens of different states. The question was elaborately argued, but not decided, in the case of *The Sewing-machine Companies*, 18 Wall. 553. It was again referred to 'n *Blake* v. *McKim*, 103 U. S. 333, 338. In the *Removal Cases*, 100 U. S. 479, Justices BRADLEY and SWAYNE expressed the opinion that it embraces every controversy in which any of the opposing parties are citizens of different states; and entertaining that view they differed from the majority of the court, and held that the word "party," in the first clause, should have a wider construction than the word "plaintiff" or "defendant" under the judiciary act, and should include any one of several plaintiffs or defendants, and not be limited to all jointly. The constitutional question was not, however, involved in the decision of the court. In the second clause of section 2 of the act of 1875 congress has avoided controverted ground by expressly limiting that clause to controversies "wholly between citizens of different states." Such controversies are undeniably within the constitutional grant of judicial power; and where such a controversy does exist it is plainly within the constitutional provision that either one of the necessary

defendants may be empowered to remove it. The reasons for this constitutional provision apply as much to each severally as to all jointly; nor is there any good reason why a defendant should not be allowed to remove the cause against the dissent of his co-defendant, as well as against the dissent of the plaintiff. The second clause of section 2 of the act of 1875 fully recognizes this constitutional right of a single defendant, by providing that either one of the plaintiffs or defendants in the cases stated may remove the cause. When, therefore, a suit containing a single controversy is removable by reason of the residence of the opposing parties in different states, inasmuch as congress has undeniably recognized the individual right of removal, and has expressly conferred that right on a single one of several co-plaintiffs or co-defendants where another controversy, not in itself removable, is joined with it; and since, moreover, the first clause applies only to a "party," *i. e.,* to all jointly on the one side or the other,—the second clause ought, if its language will permit, to be construed in furtherance of the general constitutional right of each individual to remove a controversy which is clearly a removable cause, as being within the presumed general intention of congress, in framing the act of 1875, to provide for removal according to the scope of the constitution. There is no other clause of the act which covers the case of a single controversy so as to secure this constitutional privilege to each individual suitor. And as the language of the second clause, instead of indicating any exclusion of cases having but a single controversy, appears rather to have been chosen so as to cover all suits having several plaintiffs or several defendants which have either one controversy or several, it seems to me clear that this clause should not be narrowed by construction, but should be applied, as its language imports, to both cases alike.

The motion is therefore denied.