[L. A. No. 18454. In Bank. Dec. 16, 1943.]

LETITIA DOROTHY WEBB, Appellant, v. A. C. PILLSBURY et al., Respondents.

Frank P. Doherty and Haight, Trippet & Syvertson for Appellant.

Chas. W. Fourl and George I. Devor for Respondent.

GIBSON, C. J.—Plaintiff appeals from a judgment of dismissal entered after demurrer to her complaint in an action to set aside fraudulent conveyances and to quiet title to real property was sustained without leave to amend.

It is alleged that in 1924 plaintiff entered into a contract with Franklyn L. Hutton whereby Hutton agreed to pay plaintiff $1,000 a month for the period of her natural life and the sum of $100,000, in lieu of monthly payments, if he should predecease her. The agreement provided that in the event plaintiff married before Hutton's death, the monthly payments and the sum payable on Hutton's death were to be reduced to $500 and $50,000 respectively. Thereafter plaintiff was married and divorced. In 1929 the parties entered into an agreement modifying the contract of 1924. Under the agreement as modified Hutton promised to pay plaintiff during her lifetime the sum of $1,000 a month and agreed that he would provide by will or otherwise for the payment of the sum of $100,000, in lieu of monthly payments, in the event he predeceased her. In consideration therefor plaintiff conveyed certain described real property to Hutton. The agreement further provided that if Hutton failed to make provision for the payment of the sum of $100,000, "the said sum . . . is hereby made and declared to be a direct charge against his estate."

On April 30, 1940 (approximately seven months before his death), Hutton conveyed certain real property in trust to defendant bank. The trust instrument provided that a designated parcel of the property was to be conveyed forthwith to defendant Pillsbury as compensation for services previously rendered and that the remaining property was to be held in trust for Hutton and Pillsbury under a real estate development and subdivision plan. Provision also was made therein for the transfer of the corpus of the trust to the survivor upon the death of either beneficiary. It is alleged that these conveyances were made without a fair consideration at a time when the fair salable value of the trustor's assets was less than the amount required to pay his probable liability on existing debts as they became absolute and matured. Hutton was insolvent at the date of his death on December 5, 1940, and he made no provision by will or otherwise for the payment to plaintiff of the agreed sum. Plaintiff filed a timely creditor's claim in the probate proceeding. No other creditor filed a claim against the estate and the time

within which claims could be filed expired on October 16, 1941. Plaintiff requested the administrator to prosecute an action against defendants to set aside the conveyances of April 30th as in fraud of creditors, but her request was refused. Thereafter, however, plaintiff's claim was compromised by the administrator with the approval of the probate court. Under the compromise, plaintiff received the sum of $23,500, a conveyance of all right, title and interest of the estate and of the administrator in the controverted real property, and an assignment of any and all causes of action held by the estate and the administrator to recover the property from defendants.

The complaint alleges three separate causes of action. In the first count plaintiff sues as assignee of the administrator's statutory right to set aside conveyances made by the decedent in fraud of creditors; in the second count she claims ownership of the real property as grantee of the estate and seeks to quiet title thereto; and in the third count she claims to be a creditor of the estate and as such asserts a right to set aside the alleged fraudulent conveyances.

The principal question on this appeal is whether an administrator may, with the approval of the probate court, assign to a creditor his statutory right to set aside the fraudulent conveyances of his intestate. Section 579 of the Probate Code provides that "If the decedent, in his lifetime, . . . made a conveyance that by law is void as against his creditors . . . and there is a deficiency of assets in the hands of the executor or administrator, the latter, on application of any creditor, must commence . . . an action for the recovery of the same for the benefit of creditors."

The statute neither expressly provides for nor prohibits assignment of the right of action. It is, however, established that "assignability of things [in action] is now the rule; nonassignability, the exception; and this exception is confined to wrongs done to the person, the reputation, or the feelings of the injured party. . . ." (3 Cal.Jur. 242, sec. 5; see, also, *Jackson* v. *Deauville Holding Co.*, 219 Cal. 498, 500 [27 P.2d 643]; *Wikstrom* v. *Yolo Fliers Club*, 206 Cal. 461, 464 [274 P. 959].) It has been held, accordingly, that a creditor may assign a right of action to set aside a fraudulent conveyance. (*Emmons* v. *Barton*, 109 Cal. 662, 667 [42 P. 303]; *Brandon* v. *Faria*, 99 Cal.App. 594, 598 [279 P. 192]; see, also, cases cited in 27 C.J. 478.) And al-

though there is authority to the contrary, it has been held that a trustee in bankruptcy whose position is analogous to that of the administrator of an insolvent estate, may assign his statutory right to set aside conveyances made by the bankrupt in fraud of creditors. (1 Glenn, Fraudulent Conveyances and Preferences, 249, sec. 132; *In re Downing,* 192 F. 683, affirmed in 201 F. 93 [119 C.C.A. 431]; *Strong* v. *Durdle,* 94 Wash. 157 [162 P. 6]; see *In re Rosen,* 15 F.Supp. 516.)

Section 579 of the Probate Code recognizes that the right to recover property conveyed by a decedent in fraud of creditors is an asset of his insolvent estate and that the executor or administrator is a trustee thereof for the benefit of creditors. The primary object of the statute is to enable the trustee to reduce that asset to possession and administer it for the benefit of creditors under the direction and supervision of the probate court. (*Hills* v. *Sherwood,* 48 Cal. 386, 393.) It has been held, however, that a creditor may not maintain an action to set aside a fraudulent conveyance, at least until the creditor has exhausted all means of procuring such an action to be brought by the executor or administrator. (*Emmons* v. *Barton,* 109 Cal. 662, 667-668 [42 P. 303]; *Beswick* v. *Churchill Co.,* 22 Cal.App. 404 [134 P. 722]; *Beswick* v. *Dorris,* 174 F. 502; *Putney* v. *Fletcher,* 148 Mass. 247 [19 N.E. 370].) Thus the statute has as a secondary object the prevention of complications that would result if several creditors were to pursue the remedy and seek to apply the property to their individual claims. In *Beswick* v. *Dorris,* 174 F. 502, 508, it was said: ". . . the court having the estate in its keeping should be given opportunity to say whether the action shall be brought by the representative of that estate before the creditor is at liberty to pursue an alternative remedy." The purpose of the statute is not defeated, where, as here, the administrator voluntarily assigns his statutory right to the sole creditor with the approval of the probate court.

Defendants rely upon an early Michigan case in support of their contention that the right of an administrator to set aside the fraudulent conveyances of his intestate may not be assigned. (*Morris* v. *Morris,* 5 Mich. 171.) The court there advanced two reasons for holding the right nonassignable under a statute similar to section 579: (1) A court of equity will not countenance the assignment of a cause of action for

a tort, or to set aside a conveyance, or other act, as fraudulent. (2) Unless the fruits of litigation come into the hands of the administrator, the creditors will not obtain an equal distribution. The first reason does not merit consideration in a jurisdiction which recognizes the assignability of causes of action sounding in fraud. (*Jackson* v. *Deauville Holding Co.*, 219 Cal. 498, 500 [27 P.2d 643]; *Wikstrom* v. *Yolo Fliers Club*, 206 Cal. 461, 464 [274 P. 959].) The second reason is not applicable where, as here, the assignee is the sole creditor of the estate and the only person prejudiced by the challenged conveyance.

Defendants also argue that since an administrator is the creature of statute, he cannot make an assignment unless specifically authorized by statute. As previously noted, however, the probate court authorized the assignment and the administrator derived his power to act from the order of the court. (*Los Angeles County* v. *Morrison*, 15 Cal.2d 368, 371 [101 P.2d 470, 129 A.L.R. 443].) The rule that administration proceedings are purely statutory does not mean that the authority of those charged with the conduct of such proceedings is regulated solely by statute. (*Maddock* v. *Russell*, 109 Cal. 417, 422 [42 P. 139].)

We conclude, therefore, that an administrator of an insolvent estate may assign his statutory right to set aside fraudulent conveyances of his intestate if authorized to do so by the probate court where no possible harm can result to creditors.

It is next contended that plaintiff was never a creditor within the meaning of section 579 of the Probate Code, but merely held an equitable lien against the estate. There is no merit in this contention. The contract created an obligation to pay plaintiff designated sums on certain conditions and the fact that the sum of $100,000 was declared to be a direct charge upon the estate did not deprive plaintiff of her rights as a creditor. It is further asserted that there were no claims allowed in the estate and that the existence of allowed claims is a prerequisite to the right of an administrator to set aside conveyances under section 579. (11B Cal.Jur. 404, sec. 976.) The complete answer to this contention is that the plaintiff's claim was not rejected but was compromised by the cash payment and the assignment, which amounted to an allowance of the claim.

Defendants argue that the complaint is defective for the

reason that it shows on its face that the contract which is the basis of plaintiff's claim is against public policy and void as being in restraint of marriage. The second agreement contains no conditions concerning marriage, and since plaintiff's claim is founded on the agreement as modified it is unnecessary to consider the effect of the original provisions regarding marriage. It is also claimed that the complaint is defective in that it does not appear that there was any consideration given by plaintiff for the agreement. The second, or modification agreement, attached to the complaint as an exhibit, expressly recites the consideration given by plaintiff. There is no specific allegation in the complaint that consideration was given for the original contract. It is alleged, however, that the contract was lost, from which it may be implied that it was in writing, in which event it would carry the presumption that it was made for a consideration. (Civ. Code, sec. 1614.) Should it develop in the trial court that plaintiff's claim is not based solely upon the modification agreement but is dependent in part upon the original contract, any ambiguity or uncertainty as to whether the first contract was in writing can be clarified by amendment.

The judgment is reversed.

Shenk, J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Petitioner's application for a rehearing was denied January 13, 1944.